Coös,
June, 1894.

## HOPKINS v. RAYS & a., WHIPPLE, Claimant.

A precept in a writ commanding the officer to attach all logs drawn by the defendants, and lying by a certain railroad in specified towns, is a sufficiently definite description of the property, when there are distinguishing marks by which it may be identified.

A lien for hauling logs may be enforced against those cut in the same lumbering operation, and not drawn by the plaintiff.

ASSUMPSIT, to enforce a lien for labor and supplies to the amount of $570.46 furnished by the plaintiff to the defendants in cutting and hauling logs. Facts found by a referee.

The defendants were engaged in cutting and hauling logs from their lot in Kilkenny. The plaintiff furnished them with supplies to the amount of $390.46, which went into the general enterprise, and drew logs as directed, for which there was due the sum of $180. The logs taken from the lot were drawn to different places. Those attached by the plaintiff were not drawn by her teams, but came from the same lot as those for the drawing of which a lien was claimed.

The claimant contended that the plaintiff was not entitled to judgment *in rem*, (1) because the logs to be attached were not described with sufficient definiteness in the precept to the officer, and (2) because the plaintiff had no lien on the logs attached for the item of $180, those logs not having been drawn by her. The court ordered judgment on the report for the plaintiff *in rem*, and the defendants excepted.

*Ladd & Fletcher*, *W. & H. Heywood*, and *Shurtleff & Sullivan*, for the plaintiff.

*Drew, Jordan & Buckley*, for other creditors.

*Alland G. Fay*, for the claimant.

SMITH, J. The precept in the writ commanded the officer to attach all the logs drawn by the Rays, McPherson & Co., and lying by the Kilkenny railroad in Lancaster, Kilkenny, or Northumberland. The officer's return shows an attachment of all hard-wood logs lying upon the pond, in and about the mill-yard of Whipple's [the claimant's] mill in Lancaster. The logs attached were lying on the mill-pond three or four rods from the railroad. At the time of the attachment they had been purchased by Whipple of the defendants, subject to whatever lien the plaintiff had.

The description of the property was sufficiently definite to enable the officer to find and take possession of it. The property was logs. The particular logs were those drawn by the defendants, and were distinguishable from other logs there by certain marks upon them. The place or places where the logs might be found were the towns of Lancaster, Kilkenny, and Northumberland, and the particular locality in the towns was the Kilkenny railroad, or, in the language of the precept, "lying by the Kilkenny railroad." The logs were found on the ice in Whipple's mill-pond, on the line of the railroad and three or four rods from it. Logs lying no farther than that from the track of a railroad may well be said to be "lying by the railroad." They were doubtless lying as near the railroad as bulky articles of that nature could be safely or conveniently placed. No question as to their identity is raised. The fact that they had been drawn by the claimant some two miles from the place where the defendants delivered them to him, is of no importance, except so far as it might affect the ability of the officer to identify them. They were logs drawn by the defendants from the lot where the lumbering operations were carried on, although drawn the last two miles of their journey by Whipple.

In *Hill* v. *Callahan*, 58 N. H. 497, the precept to the officer "to attach about seven hundred thousand feet of spruce logs and about twenty thousand feet of pine logs now landed on the land of John Head, in Shelburne, in said county of Coös, near and upon the bank of the Androscoggin river, and upon said river," was held sufficient and "quite as definite as the nature of the case would seem to permit." The description of the logs in this case was not less definite. It is insisted that the description should be so definite that the officer without other direction may identify the property. This cannot be literally correct. If the officer is a stranger, he may inquire where the locality named in the precept is; or, if the property is described as in the possession of A, he may inquire who A is; or, if in a building or on land of A, which building or what land is A's; or, if the property is described as logs drawn by B in the possession of A, and A has also logs drawn by C, he may inquire what logs were drawn by B.

One construction of the language of the precept may be, that the logs were drawn by the defendants to and left by the side of the railroad for shipment. But that is not the only construction. The language is broad enough to include logs drawn by the defendants, although not the whole distance from the lot, the destination of which was the Whipple sawmill, or other mills elsewhere on the line of the railroad. The description is sufficient, if the officer can find the property by the exercise of reasonable diligence.

The plaintiff has a lien on the logs attached for the item of $180. There would be great difficulty in coming to any other conclusion. Suppose ten men hauled logs for the same defendants and from the same lot, under separate contracts. It would be unreasonable to hold that each, when engaged in a common enterprise, must preserve the identity of the logs drawn by his own team. If it is not impossible to regulate their rights in any other way than by holding that each has a lien on all the logs drawn, a different rule would be so vexatious, expensive, and uncertain, that it is safe to conclude that the legislature never intended such a result.

The logs attached were distinguishable by marks from other logs. The labor of the plaintiff's team was in furtherance of a general lumbering operation of cutting and hauling logs from the defendants' land. If a person's lien were limited to the particular logs drawn by his own team, the purpose of the statute would be defeated in many instances by the impracticability and impossibility of following the logs into the possession of those to whom the owner might sell them, or from their becoming intermingled with logs drawn by others. The statute is to be reasonably construed to effectuate the intention of the legislature. *Bean* v. *Brown*, 54 N. H. 395, 397. This construction is consistent with the general purpose of the statute, which gives a lien, not only to those who cut the timber or haul the logs, but to him who furnishes supplies for the men and teams engaged in cutting and hauling, to the person who hauls the supplies, and to the cook in the camp. P. S., *c.* 141, *s.* 12.

*Exceptions overruled.*

WALLACE, J., did not sit : the others concurred.